UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JENNIFER C.[1],

       Plaintiff,

   v.                                                                          21-CV-22 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## DECISION AND ORDER

Plaintiff Jennifer C. brought this action under 42 U.S.C. § 405(g) of the Social

Security Act, seeking review of the decision made by the Commissioner of the Social

Security Administration finding that she was not disabled.  Dkt. 1.  Plaintiff moved

for judgment on the pleadings.  Dkt. 9.  The Commissioner responded and cross-

moved for judgment on the pleadings, to which Plaintiff replied.  Dkts. 11, 12.  For

the reasons below, the Court denies Plaintiff's motion and grants the

Commissioner's cross-motion.

_____

[1] Pursuant to the Western District of New York's November 18, 2020 Standing
Order regarding the naming of plaintiffs in Social Security decisions, this decision
and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Title II Disability

Insurance Benefits ("DIB") filed on September 10, 2018.[2]  Tr. 180-81.[3]  Plaintiff's

application was initially denied, and she requested a hearing before an

administrative law judge ("ALJ").  Tr. 91-100, 103-04.

Following the hearing, in which Plaintiff was represented by counsel, ALJ

William M. Weir issued a decision finding that Plaintiff was not disabled.  Tr. 9-31.

Plaintiff's request for Appeals Council Review was denied, after which she

commenced this action.  Tr. 1-6; Dkt. 1.

## LEGAL STANDARDS

### I.    District Court Review

Judicial review of disability claims under the Act is limited to whether the

Commissioner's decision is supported by substantial evidence and whether the

correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729

F.3d 172, 177 (2d Cir. 2013).  The Commissioner's factual findings are conclusive

when supported by substantial evidence.  *See Estrella v. Berryhill*, 925 F.3d 90, 95

(2d Cir. 2019).  "Substantial evidence" is "more than a mere scintilla" and "means

such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] Plaintiff applied for DIB, which requires a showing that she became disabled while
meeting the Act's insured status requirements.  *See* 42 U.S.C. § 423(d)(1)(A); *Schillo
v. Kijakazi*, 31 F.4th 64, 69-70 (2d Cir. 2022).

[3] The filing at Dkt. 7 is the transcript of the proceedings before the Social Security
Administration.  All references to Dkt. 7 are hereby denoted "Tr. __."

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   **Disability Determination**

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

3

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. 20 C.F.R. § 404.1545.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2017 and had not engaged in substantial gainful activity between her alleged disability onset date, October 1, 2013, and her date last insured. Tr. 14-15. The ALJ also found that Plaintiff suffered from the following severe impairments: obesity, carpal tunnel syndrome, and major depressive disorder. Tr. 15. The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.

After consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> [Plaintiff] can frequently handle, finger[,] and feel. [She] can incidentally (5% or less) use the right hand and arm above the shoulder level. [She] must avoid extreme cold, fumes, dusts, gases, or irritants[,] and humidity. [She] requires sit-stand at will

5

> option (*defined as* every hour but would continue focus and
> station without being away or off task more than 2 minutes).
> [She] can perform simple, unskilled work.

Tr. 19 (italics in original).

The ALJ found that Plaintiff could not perform past relevant work as a

certified nurse assistant or a home attendant.  Tr. 25.  But he concluded that

Plaintiff was not disabled because her age, education, work experience, and RFC

allowed her to perform jobs that existed in significant numbers in the national

economy during the relevant period.  Tr. 25.  As such, according to the ALJ,

Plaintiff was not under a disability between October 1, 2013, her alleged disability

onset date, and June 30, 2017, her date last insured.  Tr. 27.

## II.    Plaintiff's Argument

Plaintiff makes two arguments for judgment in her favor.  *See* Dkt. 9-1.

First, she argues that the ALJ's highly specific RFC was not supported by

substantial evidence.  *Id.* at 13.  Second, she claims that the ALJ erred by relying on

evidence of her non-compliance with treatment to support the ultimate RFC

determination.  *Id.* at 18.  As set forth below, Plaintiff's arguments are without

merit.

## III.   Analysis

### A. The ALJ's RFC limitations for overhead reaching and a sit-stand option were supported by substantial evidence.

Plaintiff first argues that the ALJ's RFC determination was highly specific

and not tethered to any evidence in the record.  *See* Dkt. 9-1, at 13.  Plaintiff's

particular issue is with the ALJ's finding that she could use her right hand and arm

6

above the shoulder "5% or less" of the time and that she required as sit-stand at will

option. *Id.* at 16; *see* Tr. 19.

An ALJ must "weigh all of the evidence available to make an RFC finding

that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56

(2d Cir. 2013); *accord Nora A. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 85, 93

(W.D.N.Y. 2021). The ultimate RFC determination does not need to "perfectly

correspond with any of the opinions of medical sources cited in [the ALJ's] decision."

*Matta*, 508 F. App'x at 56. The ALJ is not a medical professional, however, and is

therefore "not qualified to assess a claimant's RFC on the basis of bare medical

findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018). What is more,

just because an ALJ includes a limitation with a percentage range or other

descriptor in the RFC does not mean that the limitation is unsupported by

substantial evidence. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016)

(summary order) ("The fact that the ALJ assigned a particular percentage range (0-

10%) to illustrate [Plaintiff's] limitation does not undermine the fact that the ALJ's

finding was supported by substantial evidence."). The question then becomes

whether the ALJ's RFC limitations for overhead reaching[4] and a sit-stand option

were supported by substantial evidence. *Id.*

As to the overhead reaching limitation, the ALJ thoroughly reviewed

Plaintiff's treatment records related to her work-related shoulder injury in

---

[4] The Court will use the phrase "overhead reaching limitation" as shorthand for the
limitation that "[Plaintiff] can incidentally (5% or less) use the right hand and arm
above the shoulder level." Tr. 19.

September 2013, noting that an MRI the next month showed "mild to moderate tearing with arthropathy, fraying[,] and flattening of the biceps tendon." Tr. 15 (citing Tr. 277-78, 386). And the ALJ acknowledged a marked flexibility limitation in overhead reaching from December 2016. *See* Tr. 21 (citing Tr. 359.) The ALJ remarked, however, that Plaintiff had "grossly normal coordination, rapid alternating movements, and symmetric arm swing with intact sensation, normal muscle tone and bulk," as well as normal mobility of the shoulder." Tr. 16 (citing Tr. 284, 359, 387, 454, 665). The ALJ also described how Plaintiff's subsequent treatment records showed "normal to inspection and palpitation without tenderness despite some limited forward flexion and abduction." *Id.* (citing Tr. 641, 758). Lastly, the ALJ discussed how Plaintiff had a "full range of motion and grossly normal musculoskeletal and neurological findings" during a consultative examination performed by Michael Rosenberg, M.D., on November 13, 2018. *Id.* (citing Tr. 951-52).

The ALJ's limitation of Plaintiff to only incidental overhead reaching also accommodates the opinions of Dr. Rosenberg and independent consultative examiner Gregory Chiaramonte, M.D. *See* Tr. 496-500, 528-33, 877-83, 949-53. Dr. Chiaramonte examined Plaintiff in relation to her application for workers' compensation benefits, but on July 23, 2014, he opined that Plaintiff could work "with restrictions of overhead activities." Tr. 499. And Dr. Rosenberg did not limit Plaintiff's overhead reaching at all based on his examination on November 13, 2018.

*See* Tr. 952. The ALJ's limitation of Plaintiff to "incidental"[5] overhead reaching can be considered more restrictive than necessarily required by Dr. Rosenberg's and Dr. Chiaramonte's opinions. *See My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 106 (W.D.N.Y. 2021); *see also Baker o/b/o Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record."). The Court concludes that the ALJ's limiting of Plaintiff to only incidental use of her right hand and arm above the shoulder is supported by substantial evidence. *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (finding that an ALJ's limitation of Plaintiff to 5% off-task time was not error simply because the limitation was not connected to a specific piece of evidence in the record).

Turning to the sit-stand at will option, the ALJ acknowledged Plaintiff's subjective complaints that she experienced "symptoms of chronic pain, fatigue, . . . limitations of mobility, . . . weakness, numbness, and swelling" due to her morbid obesity and carpal tunnel syndrome. Tr. 19 (citing Tr. 32-78, 219-228). The ALJ also took into account the fact that Plaintiff "reported difficulty" in walking and sitting, as well as her report that she could "walk 1 block, stand for 30 minutes, sit for 10 minutes," and needed to change positions due to pain. Tr. 19

---

[5] In the Social Security context, the term "occasionally" means "from very little up to one-third of the time," while the term "frequently" means "from one-third to two-thirds of the time." *See* SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). The ALJ's use of the term "incidental" to describe Plaintiff's ability to reach overhead 5% of the time is consistent with the other durational definitions found in SSR 85-15.

(citing Tr. 32-78, 219-228, 885).  But the ALJ highlighted a number of normal examination findings, despite Plaintiff's obesity, including a regular heart rate and rhythm, normal motor strength, and normal gait.  Tr. 21 (citing Tr. 281, 284, 318, 330, 341, 373, 383, 421, 457, 472, 561, 579, 602, 641, 660, 918, 966, 1001).  The ALJ also considered Dr. Rosenberg's observation that "while [Plaintiff] had slow gait, she used no assistive devices and needed no help mounting/dismounting the exam table or rising from a chair."  Tr. 21 (citing Tr. 950).  Based on this evidence, the Court agrees with the ALJ's conclusion that Plaintiff's "obesity is accommodated by the full range of sedentary exertion with an additional sit-stand option while remaining on task."  Tr. 21; *see Johnson*, 669 F. App'x at 47.

In sum, the ALJ based his RFC determination on a thorough review of the objective medical evidence, Plaintiff's subjective complaints, and the opinions on the record.  *See* Tr. 15-25.  Plaintiff has not met her burden of demonstrating that she had a more restrictive RFC than as opined by the ALJ.  *See Timothy J. v. Comm'r of Soc. Sec.*, 583 F. Supp. 3d 419, 426 (W.D.N.Y. 2022) (citing *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)) ("It was ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.").  The Court concludes that the ALJ's overhead reaching limitation and sit-stand limitation were not based on his own lay opinion and supported by substantial evidence.  *Matta*, 508 F. App'x at 56.

10

**B. The ALJ did not improperly rely on Plaintiff's non-compliance with treatment in making his RFC determination.**

Plaintiff next argues that the ALJ erred by "relying on evidence of treatment non-compliance to support his RFC." Dkt. 9-1, at 18. The ALJ noted several instances of Plaintiff's non-compliance, including where she was not "100% compliant" with her CPAP machine, where she "adamantly refused bariatric surgery referral," and where she "missed or was late to many mental health appointments due to transportation difficulties." *See* Tr. 20-21 (citing Tr. 302, 310, 362, 370, 440). Plaintiff apparently believes that the ALJ denied her benefits solely based on her non-compliance. *See* Dkt. 9-1, at 18. But the ALJ found that her "evidence of non-compliance demonstrates a *possible* unwillingness to do what is necessary to improve [Plaintiff's] condition" and that "[i]t *may* also be an indication that [her] symptoms are not as severe as purported." Tr. 21 (emphasis added). An ALJ may consider a claimant's non-compliance with medication and conservative treatment in assessing the claimant's subjective complaints. *See James D. v. Comm'r of Soc. Sec.*, 547 F. Supp. 3d 279, 290 (W.D.N.Y. 2021) (citations omitted). As mentioned above, the ALJ constructed Plaintiff's RFC based on a thorough review of the entire record, and the Court concludes that the ALJ did not improperly rely on Plaintiff's non-compliance in crafting the RFC determination.

<u>CONCLUSION</u>

For these reasons, the Court **GRANTS** the Commissioner's motion for judgment on the pleadings (Dkt. 11) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 9).  The Clerk of the Court will close this case.


SO ORDERED.


Dated:        February 2, 2023
              Buffalo, New York


_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE